UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: June 2, 2015

JACOB REYES,

                Petitioner,

        v.

SUPERINTENDENT OF ATTICA
CORRECTIONAL FACILITY,

                Respondent.

No. 11-CV-2479 (RA)

OPINION & ORDER

RONNIE ABRAMS, United States District Judge:

In this petition for a writ of *habeas corpus* (the "Petition") filed pursuant to 28 U.S.C. §
2254, Petitioner Jacob Reyes challenges his conviction of manslaughter in the first degree, in
violation of Section 124.20(1) of the New York Penal Law, following a jury trial. On October 21,
2013, Magistrate Judge Debra C. Freeman issued a Report and Recommendation (the "Report")
recommending the dismissal of the Petition, to which Petitioner has objected. For the following
reasons, the Court adopts the thorough and well-reasoned Report in its entirety.

## BACKGROUND

On August 9, 2005, Petitioner was convicted of manslaughter in the first degree in state
Supreme Court in Bronx, New York. Blira-Koessler Decl. ¶ 4. The charges involved Petitioner's
participation in the fatal beating of Washington Rojas in the Bronx on July 9, 2003, which resulted
in Rojas's death from a combination of blunt-force injuries to his head and torso, as well as
abdominal bleeding. Report at 2.

At trial, the prosecution's key witness was Godfrey Irizarry, who knew Petitioner from the
apartment building where they both lived, and claimed to have witnessed the beating—and
Petitioner's involvement in it—from his apartment and the building's roof. *Id.* at 2–3; Trial Tr. at

72–87, 103. Irizarry testified that other people also witnessed the beating from the building's roof, including Ramona Marte, one of the assailant's aunts. Following the incident, Marte purportedly asked Irizarry if he would say anything about what he had seen, which he testified, "concerned" and "scared" him. Trial Tr. at 109, 194–95. Petitioner, testifying on his own behalf, gave a significantly different account of the events. He claimed to have attempted to intervene to stop the beating, rather than participating in it. *Id.* at 379–84. Petitioner also attempted to undermine Irizarry's credibility through his testimony that Irizarry was a marijuana dealer and that he had purchased marijuana from him on a daily basis. *Id.* at 371–73. Petitioner further testified that several weeks before his arrest, he had a heated argument with Irizarry's wife regarding drug sales in his territory. *Id.* at 374–75.

After trial, Petitioner was convicted of first degree manslaughter and sentenced to a determinate term of 25 years of imprisonment and five years of supervised release. Trial Tr. at 548–49; Blira-Koessler Decl. ¶ 4.

On April 19, 2006, Petitioner, represented by his trial counsel Mitchell A. Golub, moved to set aside the verdict pursuant to N.Y. Crim. Proc. § 330.30, raising three claims based on new evidence regarding Irizarry: (1) that he had previously been charged with heroin possession and pleaded guilty to disorderly conduct, but that such charge had not been disclosed; (2) that he testified about that arrest at the later trial of Petitioner's co-defendants in a purportedly inconsistent manner; and (3) that a police memorandum produced to co-defendants' counsel involving an account of the beating that may have been provided by Irizarry had also not been disclosed to Petitioner. Blira-Koessler Decl. Ex. 1. The trial court denied his claim as to Irizarry's prior charge and inconsistent testimony on June 29, 2006, and after conducting a hearing, denied the claim as to the police memorandum as well. *Id.*, Ex. 3; Ex. 9 at 1 n.2. Although Petitioner did not expressly

2

claim a *Brady* violation regarding Irizarry's prior charge in his motion, the trial court noted in a footnote that *Brady* had not been violated because "Irizarry's testimony disclosed to [him] the conduct underlying the complaint and defense counsel was able to utilize it on cross-examination." *Id.*, Ex. 3 at 4 n.3.

On April 28, 2008, Petitioner, through appellate counsel Randall D. Unger, filed a direct appeal to the Appellate Division, First Department, raising three claims: (1) the evidence adduced at trial was legally insufficient to support the verdict, or in the alternative, the verdict was against the weight of the evidence; (2) the prosecution's withholding of Irizarry's criminal record deprived him of due process, and the trial court erred in denying such claim in the § 330.30 motion; and (3) his sentence was excessive. *Id.* Ex. 4.

On January 20, 2009, the Appellate Division affirmed Petitioner's conviction and sentence. *People v. Reyes*, 872 N.Y.S.2d 19 (1st Dep't 2009). The Appellate Division found no basis to reduce Petitioner's sentence and declined to disturb the jury's findings as to witness credibility. *Id.* With regard to Irizarry's criminal record, the court concluded that the evidence "would not have created any reasonable possibility of changing the result" and that the evidence was "entirely cumulative to trial testimony concerning the same incident." *Id.* The court further rejected Petitioner's due process claim based on that evidence, declining to review it because it was unpreserved; however, "[a]s an alternative holding," it also rejected the claim "on the merits." *Id.* at 20.

The Court of Appeals denied Petitioner's motion for leave to appeal on May 11, 2009. *People v. Reyes*, 909 N.E.2d 593 (N.Y. 2009).

On August 4, 2010, Petitioner moved to vacate his conviction pursuant to N.Y.P.L. § 440.10(1)(f), (g), and (h) on the basis of ineffective assistance of his trial counsel, Golub. Blira-

3

Koessler Decl. Ex. 7, Edelstein Aff. Specifically, Petitioner contended that Golub failed to investigate and call at trial three witnesses: SennyMarie Reyes, Zoraida Velez, and Ramona Marte. Petitioner claimed that, had these witnesses testified at trial, they "would have either bolstered his version of events or severely undermined Irizarry's credibility." *Id.* ¶ 4. According to Petitioner, Reyes witnessed the incident and would have corroborated Petitioner's version of events, while Velez and Marte's testimony would have undermined Irizarry's credibility. *Id.* Petitioner argued that his trial attorney was ineffective under both federal and state law standards because Golub's failure to call the witnesses could not have been a strategic decision and the testimony would have created a "reasonable probability of a different outcome." *Id.* ¶¶ 17–28. In support of his motion, he submitted affidavits from Velez and Marte. Velez's affidavit stated that she witnessed Irizarry threaten and argue with Petitioner prior to the beating in June 2003, although she did not know why the two were arguing. *Id.*, Velez Aff. ¶¶ 6–7. Marte's affidavit stated that she was not living in the Bronx in the spring of 2003 and was not there on the night of the beating—suggesting that Irizarry's testimony that Marte had intimidated him that night was not reliable. *Id.*, Marte Aff. ¶ 5.

Although the People investigated the witnesses in response to the motion, they were unable to confirm Petitioner's claims. The People were only able to locate Velez, whom they stated was the mother of Petitioner's co-defendant, Luis Pinales and the sister of Ramona Marte. *Id.*, Ex. 8, Karen Aff. ¶¶ 9–10. According to an affidavit from Assistant District Attorney Allen Karen, Velez told an "incredible story" regarding the beating, and the interview revealed that she was a "biased witness that would have badly undermined Reyes' defense." *Id.* ¶ 9. In addition, the People submitted an affidavit from Golub which stated that prior to trial, he and a defense investigator had repeatedly canvassed the building to interview anyone willing to speak to him, and also

4

interviewed every witness made available to them by the Petitioner. *Id.*, Golub Aff. ¶ 3. Golub attested that Reyes and Velez did not communicate to him the statements made in their affidavits at any point before or after trial. *Id.* ¶¶ 4–5. Moreover, although he had spoken repeatedly with Marte at the request of Petitioner, because Marte represented to him that she would not testify in the manner Petitioner suggested—and later described in her affidavit—Golub declined to call her as a witness. *Id.* ¶ 6.

On December 3, 2010, the trial court denied Petitioner's § 440.10 motion without a hearing. Blira-Koessler Decl. Ex. 9. The court concluded that Petitioner's trial counsel was effective "under any standard of competency," noting that nothing in Petitioner's submissions contradicted counsel's statements regarding his pre-trial investigation and that it appeared that Petitioner, along with Velez and Marte, had "been trying to hoodwink the court." *Id.* at 7.

On January 6, 2011, Petitioner sought leave from the Appellate Division to appeal the trial court's denial of his § 440.10 motion. *Id.*, Ex. 10. The Appellate Division denied leave to appeal on March 28, 2011. *Id.*, Ex. 11.

On April 11, 2011, Petitioner filed the instant Petition through counsel Jonathan Edelstein. He raised three claims: (1) that the evidence was legally insufficient to support his conviction; (2) that the prosecution failed to produce evidence of Irizarry's criminal history in violation of *Brady v. Maryland*, 373 U.S. 83 (1963) and *Giglio v. United States*, 405 U.S. 150 (1972); and (3) that Petitioner received ineffective assistance of counsel at trial. Petition at 6, 8, 9.

On October 21, 2013, Judge Freeman issued the Report, recommending that the Petition be dismissed in its entirety. Although she found that Petitioner had timely filed his Petition within the Antiterrorism and Effective Death Penalty Act's ("AEDPA") statute of limitations and had properly exhausted his claims, Report 19, 20, she concluded that each of the claims failed on the

5

merits, *id.* at 22. Petitioner, now proceeding *pro se*, filed Objections to the Report and later filed supplemental exhibits in support of those Objections.[1]

## LEGAL STANDARD

### I.   Adoption of Report and Recommendation

A district court reviewing a magistrate judge's report and recommendation "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). A court may accept portions of a report to which no objections are made as long as those portions are not "clearly erroneous." *Greene v. WCI Holdings Corp.*, 956 F.Supp. 509, 513 (S.D.N.Y. 1997) (citing Fed. R. Civ. P. 72(b)). A court must undertake a *de novo* review of those portions to which specific objections are made. *See* § 636(b)(1); *Greene,* 956 F. Supp. at 513 (citing *United States v. Raddatz,* 447 U.S. 667, 676 (1980)). However, "to the extent that the party makes only conclusory or general objections, or simply reiterates the original arguments, the Court will review the Report strictly for clear error." *See, e.g., Alam v. HSBC Bank USA, N.A.*, No. 07-CV-3540 (LTS), 2009 WL 3096293, at *1 (S.D.N.Y. Sept. 28, 2009). "Objections of *pro se* litigants are generally accorded leniency and construed to raise the strongest arguments that they suggest." *Quinn v. Stewart*, No. 10-CV-8692 (PAE)(JCF), 2012 WL 1080145, at *4 (S.D.N.Y. April 2, 2012) (internal quotations omitted). "Nonetheless, even a *pro se* party's objections to a Report and Recommendation must be specific and clearly aimed at particular findings in the magistrate's proposal, such that no party be allowed a 'second bite at the apple' by simply relitigating a prior argument." *Id.* (quoting *Pinkney v. Progressive Home Health Servs.,* 06 Civ. 5023 (LTS), 2008 WL 2811816, at *1 (S.D.N.Y. July 21, 2008)).

---

[1] Although Petitioner filed the Petition through his appellate counsel, Jonathan Edelstein, he filed his Objections and Supplemental Exhibits *pro se. See* Dkt. 10, 12, 13.

6

## II.    Review of Habeas Petition

There is no dispute that Petitioner timely filed his Petition in compliance with the Antiterrorism and Effective Death Penalty Act ("AEDPA"), and that he properly exhausted all state judicial remedies. *See* 28 U.S.C. § 2254(b)(1)(A), (d)(1)(A); Report at 19–22.[2]  Even when those procedural requirements are met, however, the Court's review is circumscribed; as the Report explains in detail, under AEDPA, where a state court decision adjudicates a petitioner's claim "on the merits," the decision must be "accorded substantial deference" by the federal court. *Fischer v. Smith*, 780 F.3d 556, 560 (2d Cir. 2015); 28 U.S.C. § 2254(d).  With respect to any claim adjudicated on the merits by the state court, a petition may not be granted unless (1) the decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court" or (2) the decision was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  Moreover, unless manifestly unreasonable, the state court's factual findings are presumed correct and may only be overcome by "clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

## DISCUSSION

As to the portions of the Report to which no objection was made, the Court finds no clear error.  The Court also finds no error—clear or otherwise—with the claims presented in Petitioner's Objections.  Petitioner argues that Judge Freeman did not properly evaluate "the weight of the evidence" in her analysis of the sufficiency of the evidence, and re-asserts his *Brady* and ineffective assistance claims.  Obj. at 19–25.  As he merely reiterates the claims in the Petition in his

---

[2] As discussed below, with regard to Petitioner's *Brady* claim, although he did not raise it himself, the claim was nevertheless addressed by the trial court and on appeal.  Report at 22.

7

Objections, the Court reviews the Report for clear error. *Alam*, 2009 WL 3096293, at \*1. This standard of review is not dispositive here, however; the Court would adopt the Report under a *de novo* standard of review as well.

## I.    Sufficiency of the Evidence

Petitioner claims that his conviction was premised on legally insufficient evidence because the prosecution's case "consisted primarily" of the testimony of Irizarry—a "self-serving alleged eyewitness." Petition at 6. He further asserts that the state court's decision was not "on the merits," and thus did not require that the Court review it under AEDPA's deferential standard of review. Obj. at 19–20.

Petitioner "bears a heavy burden in making [a sufficiency of the evidence claim] because not only must [the Court] view the evidence in the light most favorable to the prosecution, drawing all reasonable inferences in its favor," but relief may not be granted if "'*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. George*, 779 F.3d 113, 120 (2d Cir. 2015) (quoting *Jackson v. Virginia*, 443 U.S. at 307, 319 (1979) (emphasis in original)). AEDPA further restrains the Court's discretion so that the Court may not overturn a state court decision simply because it disagrees with it, but may only do so if it finds that the decision was "objectively unreasonable." *Cavazos v. Smith*, 132 S.Ct. 2, 4 (2011) (quoting *Renico v. Lett*, 559 U.S. 776, 772 (2010)).

Petitioner's argument that the state court's decision was not "on the merits" fails. An "adjudication on the merits" is one that "(1) disposes of the claim 'on the merits,' and (2) reduces its disposition to judgment." *Fischer*, 780 F.3d at 560 (quoting *Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir. 2001)). To determine if an adjudication was made on the merits, the Court must examine "(1) the state court's opinion, (2) whether the state court was aware of a procedural bar,

and (3) the practice of state courts in similar circumstances." *Id.* (citing *Spears v. Greiner*, 459 F.3d 200, 203 (2d. Cir. 2006)). Here, Petitioner's claim was expressly considered and rejected on direct appeal by the Appellate Division. The Appellate Division affirmed that the verdict was "based on legally sufficient evidence and was not against the weight of the evidence" and accordingly, that there was no basis for disturbing it. *People v. Reyes*, 872 N.Y.S.2d 19 (1st Dep't 2009).

Petitioner has pointed to no persuasive reason for finding that decision "objectively unreasonable." Under New York law, a person is guilty of first-degree manslaughter when "[w]ith the intent to cause serious physical injury to another person, he causes the death of such person or of a third person." N.Y.P.L. § 125.20(1). At trial, Petitioner did not dispute being at the scene of the beating that caused Rojas's death; he asserts, however, that contrary to Irizarry's testimony, he was trying to help Rojas. Petitioner also asserts that Irizarry's testimony—or, as he calls it, "testalying"—was implausible and uncorroborated. *See* Petition at 6; Obj. at 12–14.

Although Petitioner points to various potential inconsistencies in Irizarry's testimony and argues that Judge Freeman's Report "minimizes" those errors, the inconsistencies were presented to the jury at trial. *See, e.g.,* Trial Tr. at 154–56, 160–64, 174, 284, 322. It is well-established that the Court, "faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Cavazos*, 132 S.Ct. at 6 (quotations and citation omitted) (discussing inconsistent evidence presented at trial regarding victim's death). The Court thus agrees with the Report that it must defer to the jury's determination of Irizarry's credibility.

9

Moreover, viewed in the light most favorable to the prosecution, the Court concludes that the sum of the evidence presented at trial was sufficient to support Petitioner's conviction. The medical examiner testified that Rojas's cause of death was "blunt force injury to the head and torso with abdominal bleeding" consistent with a beating. Trial Tr. at 263-64. This conclusion was consistent with Irizarry's testimony that Petitioner, along with his co-defendants, not only beat Rojas, but that Petitioner repeatedly smashed Rojas's head into the ground and against a pole. *See, e.g.*, Trial Tr. at 102, 105. Notwithstanding inconsistencies in Irizarry's testimony, a reasonable jury could nonetheless have concluded from the evidence at trial that Petitioner "intend[ed] to cause serious physical injury" to Rojas in violation of N.Y.P.L. § 125.20(1).

## II.   Non-Disclosure of "*Brady/ Giglio*" Material

Petitioner next reasserts his "*Brady/ Giglio*" claim that the prosecution failed to produce evidence discovered after trial regarding Irizarry's arrest for heroin possession and subsequent plea to a disorderly conduct violation for that charge. That evidence, he asserts, would have revealed Irizarry's "motive to incriminate" him and had a reasonable probability of changing the verdict. Petition at 8; Obj. at 21–22. Petitioner objects to Judge Freeman's determination that he may have procedurally defaulted on the claim as well as her conclusion that, nonetheless, the evidence was cumulative of information already known to the defense, and would thus have had no bearing on the outcome of the trial. Obj, at 21–22.

The Court need not address Petitioner's first objection because despite considering whether Petitioner had procedurally defaulted, Judge Freeman reached the merits of the claim. Report at 31. In any event, the Court agrees with the Report's conclusion. Judge Freeman decided Petitioner's *Brady* claim applying a *de novo* standard of review because the Appellate Division's holding on the merits was made in the alternative. Report at 31, n.16. Although in light of the

10

Second Circuit's recent decision in *Fischer*, such a holding is likely sufficient to constitute an "adjudication on the merits" subject to substantial deference, *see* 780 F.3d at 560–61,[3] the Court agrees with Judge Freeman that under any standard of review, Petitioner's claim fails.

"While prosecutors have a constitutional duty under *Brady* and *Giglio* to disclose to the defense for use at trial helpful information, including information which impeaches government witnesses, such undisclosed information is deemed material so as to justify a retrial only 'if there is a reasonable probability that, had [it] been disclosed to the defense, the result of the proceeding would have been different.'" *United States v. Spinelli*, 551 F.3d 159, 164–65 (2d Cir. 2008) (quoting *Kyles v. Whitley*, 514 U.S. 419, 433–34 (1995)). Impeachment material is "less likely to be considered material when it 'merely furnishes an additional basis on which to impeach a witness whose credibility has already been shown to be questionable'"—*i.e.* when the evidence is merely cumulative. *Id.* at 165 (quoting *United States v. Payne*, 63 F.3d 1200, 1210 (2d Cir. 1995)).

The evidence of Irizarry's criminal complaint and plea was not material because it was cumulative of information already in Petitioner's possession. At trial, Irizarry testified about his heroin possession underlying the criminal complaint and Petitioner was given the opportunity to cross-examine him regarding the substance of that information. Report at 32–34. Specifically, Irizarry testified both on direct and cross-examination that on one occasion, he bought heroin for his uncle—the same conduct at issue in the criminal complaint. Trial Tr. at 114–15, 119–20, 200–01, 232; Obj. Ex. G. Although Petitioner attacks Irizarry's credibility by pointing to inconsistencies between his testimony at Petitioner's trial and his testimony at the co-defendants' trial regarding the heroin purchase, Obj. at 21–11, the underlying events were known to Petitioner

---

[3] The *Fischer* Court concluded that the state court's determination that the petitioner's claim was "procedurally barred *and* meritless" constituted a decision on the merits. 780 F.3d at 561 (emphasis added).

and were the subject of his trial counsel's cross-examination of Irizarry, Trial Tr. at 200–01.[4] Indeed, as Judge Freeman rightly pointed out, the information revealed by Irizarry's testimony exceeded that which would have been revealed from the criminal complaint; in addition to providing the factual context of the heroin arrest, he also testified at Petitioner's trial about his drug use, including occasional purchases of marijuana. Report at 34; Trial Tr. at 114–16; 120–22. Accordingly, even if Irizarry's heroin arrest and guilty plea had been disclosed to the defense, the result of the proceeding would not have been different.

## III.   Ineffective Assistance of Trial Counsel

Finally, Petitioner objects to the Report's conclusion that his ineffective assistance claim is without merit, and argues that his trial counsel was ineffective because he failed to investigate and call three witnesses—Ramona Marte, Zoraida Velez, and SennyMarie Reyes—each of whom would have provided exculpatory evidence and established that Irizarry had a motive to falsify his testimony. Petition at 9; Obj. at 23.   Petitioner also argues that Golub's affidavit regarding his representation of Petitioner was "self-serving" and that his decision not to call the witnesses was not strategic. Obj. at 24–25.

As described above, Petitioner originally asserted this ineffective assistance claim in his § 440 motion; to support the claim, he described the testimony he understood SennyMarie Reyes would have given if called at trial, and submitted affidavits from Velez and Marte summarizing their anticipated testimony as well.   The trial court rejected Petitioner's claim based on the

---

[4] Petitioner argues that Irizarry's trial testimony regarding the heroin purchase related to an incident distinct from that described in the criminal complaint. Obj. at 22. Although Irizarry appeared to misstate the date of the heroin purchase at Petitioner's trial, Trial Tr. at 115, there is no other indication in the record—including excerpts provided by Petitioner from Irizarry's testimony at the co-defendants' trial—that the incident described at Petitioner's trial was distinct from the incident charged in the criminal complaint, *see id.* at 201–02; Obj. Exs. E, G. Petitioner testified at both trials that he bought the heroin for his uncle. *See id.* As a result of his arrest for possession of the heroin, he pleaded guilty to disorderly conduct. Obj. Ex. E at 64. Although Irizarry denied the guilty plea at Petitioner's trial, trial counsel specifically referred to the plea and the previously sealed record on cross-examination. Trial Tr. at 201.

affidavits, explaining that neither Velez nor Marte affirmed that they had informed Golub before or during trial that they would have "testified in accordance with their affidavits." Blira-Koessler Decl. Ex. 9 at 7. Moreover, the trial court dismissed Petitioner's assertions concerning the anticipated testimony of SennyMarie Reyes, who did not submit an affidavit, as "completely unsupported by any evidence other than [Petitioner's] unsubstantiated protestations that she would have testified in his favor." *Id.* at 8–9. For these reasons, the state court found Golub's failure to call these witnesses to be reasonable, and concluded that Petitioner had failed to demonstrate ineffective assistance of trial counsel. *Id.* at 8–9.

In response to the Report, which deferred to the trial court's findings regarding this evidence, Petitioner submitted supplemental affidavits from Ramona Marte and his mother, Maria Reyes, and asserted that Velez was unable to provide a supplemental affidavit because she had been threatened by the Bronx County District Attorney's Office. Reyes Aff. (Dkt. 13) ¶¶ 5, 6, 15. In her affidavit, Maria Reyes stated that to her knowledge, neither Golub nor the investigator spoke to Zoraida Velez or Ramona Marte. Maria Reyes Aff. (Dkt. 13) ¶¶ 5, 10. Marte's new affidavit, like the first, stated that she was not a resident of the Bronx at the time of the murder, and confirmed that Golub had not asked her to testify at trial. Marte Aff. 2 (Dkt 13) ¶¶ 2–4, 6.

Although this supplemental evidence was not before Judge Freeman,[5] the Court finds no reason to depart from her conclusion that Petitioner's ineffective assistance of trial counsel claim fails. To establish an ineffective assistance claim, Petitioner must show that (1) counsel's performance "fell below an objective standard of reasonableness" under prevailing professional norms, and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the

---

[5] In reviewing a Report and Recommendation, the District Court may receive and consider new evidence. 28 U.S.C. § 636(b)(1). Although Petitioner's supplemental submission was filed almost two months after his Objections, in light of his *pro se* status, Court considers the evidence.

result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 687–88, 694 (1984). Furthermore, because the trial court denied Petitioner's ineffective assistance claim on the merits in its decision on Petitioner's § 440.10 motion, Blira-Koessler Decl. Ex. 9, the claim is subject to deferential review under AEDPA. Establishing that the state court's determination was unreasonable is therefore "all the more difficult" because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Fischer*, 780 F.3d at 561 (quoting *Harrington v. Richter*, 562 U.S. 86, 105 (2011)). Accordingly, the Court may only reverse the state court ruling if it finds that the decision "was so lacking in justification that there was . . . [no] possibility for fairminded disagreement." *Id.* (quoting *Vega v. Walsh*, 669 F.3d 123, 126 (2d Cir. 2012)).

Judge Freeman declined to set aside the state court's ruling because it was based on credibility determinations regarding the affidavits introduced by Petitioner. Report at 36. A state court's factual findings, including credibility determinations, are presumed to be correct and may only be rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Cotto v. Herbert*, 331 F.3d 217, 233 (2d Cir. 2003) (trial court's "presumption of correctness" is "particularly important when reviewing the trial court's assessment of witness credibility"). Here, for the reasons discussed above, the state court credited Golub's affidavit and rejected Petitioner's proffered affidavits. Blira-Koessler Decl. Ex. 9 at 7–9. Petitioner has not provided clear and convincing evidence that rebuts these findings regarding the ineffective assistance of counsel claim in either his Petition or his supplemental submission, as he must. Taken as true, the supplemental affidavit from Maria Reyes establishes only that she did not witness Golub speak to either Velez or Marte while at the scene of the crime. Marte's second affidavit merely restates the assertions made in her previous affidavit—*i.e.* that she had moved out of the Bronx in the spring of 2003 and did not

14

live there at the time of the murder. *See* Marte Aff. 2 ¶¶ 2–4; Blira-Koessler Decl. Exs. 7, 9.[6] These new affidavits thus fall short of rebutting the findings made by the state court.

Even if the Court were not significantly restrained by the standard of review under AEDPA, Petitioner's ineffective assistance claim would nonetheless fail. The decision "whether to call specific witnesses—even ones that might offer exculpatory evidence—is ordinarily not viewed as a lapse in professional representation." *Pierre v. Ercole*, 560 F. App'x 81, 82 (2d Cir. 2014) (quoting *United States v. Best*, 219 F.3d 192, 201 (2d Cir. 2000)). Indeed, the Court begins with "the presumption that counsel was effective, and, when reviewing the challenged conduct, looks for legitimate justifications for that conduct, including justifications transparent on the record." *Id.* (internal quotation omitted).

In this case, Petitioner's trial counsel identified practical reasons for not calling these witnesses. Specifically, he explained that he had not been told that any of the potential witnesses— Marte, Reyes, or Velez—would have testified in the manner described in the affidavits or by Petitioner's appellate counsel, and that, indeed, Ms. Marte told him in "repeated discussions" that she would not testify in such a manner. Golub Aff. ¶¶ 4–6. As to Petitioner's allegation regarding Irizarry's credibility, Golub thoroughly and vigorously cross-examined him, including by questioning him about his past drug use and purchases of marijuana and heroin, a prior dispute between his wife and Petitioner, physical limitations to his ability to observe the crime from the roof, and inconsistencies between his trial testimony and his prior statements. *See, e.g.,* Trial Tr. at 127, 129, 156, 158, 161–63, 185–87, 201–02. In view of these circumstances, Golub's decision may "reasonably be understood as a strategic choice." *Pierre*, 560 F. App'x at 83 (explaining that the attorney's cross-examination of key prosecution witness was effective and vigorous overall).

---

[6] Marte's first affidavit stated that she moved to Brewster, New York, although her second affidavit states that she has lived in Connecticut since leaving the Bronx. Marte Aff. ¶ 3; Marte Aff. 2 ¶ 3.

For these reasons, the Court agrees with Judge Freeman that Petitioner fails to establish an ineffective assistance claim.

## CONCLUSION

The Court has reviewed all remaining portions of the Report for clear error and finds none. The Court adopts the Report and Recommendation in its entirety.  Accordingly, the petition for a writ of *habeas corpus* is denied and the action is dismissed with prejudice.  The Clerk of the Court is respectfully directed to close the case.

SO ORDERED.

Dated:        June 2, 2015
              New York, New York

Ronnie Abrams
United States District Judge

16